Charles R. JACKSON, Plaintiff–
Appellant,

v.

Tom L. CAREY; R. Papac, Lt.; J. Marshall; A. Davis; E. Padilla; -Burton; R. Lieberman, Doctor, Defendants–Appellees.

No. 01–17126.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Dec. 24, 2003.

Gail Johnson (argued) and Daniel H. Bookin, O'Melveny & Myers LLP, San Francisco, CA, for the plaintiff-appellant.

Song Hill, Deputy Attorney General (argued), Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford, Senior Assistant Attorney General, Allen R. Crown, Supervising Deputy Attorney General, San Francisco, CA, for the defendants-appellees.

Before PREGERSON, BEAM,* and PAEZ, Circuit Judges.

BEAM, Circuit Judge.

Inmate Charles Jackson filed a complaint in federal district court, claiming that defendants Carey, Papac, Marshall, Davis, and Padilla (collectively "the prison officials") violated his constitutional rights when they allowed his transfer to Corcoran–Security Housing Unit (Corcoran–SHU) after his successful appeal, which ordered the reissue and rehearing of the rule violation report at· issue in this case. Jackson appeals the district court's dismissal of his second amended complaint

---

* The Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

for failure to state a claim. *See* Fed. R.Civ.P. 12(b)(6).

Construing Jackson's pro se pleadings liberally, as we must, we find that Jackson alleges facts that, if true, entitle him to relief. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002), *cert. denied,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003). We therefore reverse, in part, the district court order. Because we reverse the district court's dismissal of Jackson's complaint, we also reverse the court's dismissal of Jackson's claims against the prison officials in their individual capacities and remand the issue of qualified immunity to the district court. We affirm the district court's dismissal of the claims against the prison officials in their official capacities.

## I. BACKGROUND

We recite and evaluate the facts as Jackson alleged them in his second amended complaint. *Id.* ("The district court's dismissal of the complaint under Rule 12(b)(6) is reviewed *de novo* ... [and a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.").

On December 16, 1997, prison officials removed Jackson from the general population at the California Correctional Institution in Tehachapi (CCI–Tehachapi) and placed him in administrative segregation pending a disciplinary hearing to address a rule violation report issued by prison personnel. The rule violation report alleged that Jackson had committed a battery by pushing a doctor's hand away as the doctor attempted to place a stethoscope on Jackson's chest. Lieutenant Papac conducted a disciplinary hearing concerning that report on January 20, 1998. Papac did not allow Jackson to call witnesses at the hearing and found Jackson guilty of the rule violation, referring his finding of guilt to the Classification Committee for review.

On February 15, 1998, Jackson filed an inmate appeal challenging the finding. On February 24, 1998, before Jackson's appeal was heard, Marshall, a member of the Classification Committee, met with Jackson and recommended to the Committee that Jackson be assessed a one-year Security Housing Unit (SHU) term. The Committee adopted Marshall's recommendation. Jackson was not transferred to Corcoran–SHU at that time, however, and remained in administrative segregation.

On March 14, 1998, Lieutenant Canady interviewed Jackson regarding his appeal. As a result of that interview, an Appeal Response issued, granting Jackson's appeal and ordering that the December 16 rule violation report be "reissued and reheard." The Appeal Response stated that if Papac "denied reasonable requests [to present evidence] he prejudiced [Jackson's] defense." Associate Warden T.E. Vaughn signed the Appeal Response on March 31, 1998, and Chief Deputy Warden W.J. Sullivan signed it on April 1, 1998.

Also on April 1, 1998, Officer Schroder, a staff member in administrative segregation where Jackson was housed, informed Jackson that Jackson's name was on a transfer list to Corcoran–SHU. Because the Appeal Response vacated the transfer order, Jackson asked Schroder to call Marshall to see why the transfer had not been cancelled. Marshall told Schroder that Jackson would not be transferred but Marshall never acted to stop the transfer.

Jackson then tried to stop the transfer by filing another inmate appeal on April 1, 1998, addressing it directly to Warden Carey. Padilla, a prison appeals coordinator, responded to this appeal on April 28, 1998, requesting more documentation, but prison officials had already transferred

Jackson to Corcoran–SHU on April 8, 1998.

According to California Department of Corrections Operations Manual § 54100.18.3, attached as an exhibit to Jackson's complaint, "[a] decision to order the rehearing of a disciplinary charge acts to void all prior dispositions concerning the CDC Form 115 being appealed." Thus, Jackson alleges that as of April 1, 1998, the date the Appeal Response was signed, the Classification Committee's assessment of a one-year term at Corcoran–SHU was void and Jackson should not have been transferred. Jackson also argues that according to the California prison regulations, for those inmates not already incarcerated in the SHU, a determinate period of SHU confinement is available *only* for inmates found guilty of a serious offense specifically listed in the regulations. At the time of Jackson's transfer he had not been found guilty of the December 16 rule violation report because a rehearing had been ordered.

Jackson further alleges that neither Marshall nor Padilla took the required steps to stop the illegal transfer to Corcoran–SHU. Additionally, on April 6, 1998, two days before his transfer, Davis interviewed Jackson regarding an unrelated appeal. During that interview, Jackson raised concerns about the pending transfer but Davis refused to address that concern, as it was not the topic of that scheduled interview.

On April 8, 1998, the date of Jackson's transfer, Davis explained that the transfer was taking place because the prison needed room and the rule violation report was not ready for reissue. Davis stated that once the reissue was ready it would be sent to Corcoran–SHU where it would be reheard. As a result of Davis's involvement, Jackson alleges that Davis knowingly allowed the illegal transfer.

Jackson's rule violation report was not reissued at Corcoran–SHU during the five months Jackson spent there. In fact, Jackson was transferred back to administrative segregation on September 8, 1998 (five months after his transfer and eight days before his Corcoran–SHU term was to expire) and the rule violation report was reissued upon his arrival. But, the rule violation report was never reheard and was dismissed entirely on September 17, 1998.

Jackson claims that the prison officials transferred him to Corcoran–SHU for punitive reasons and that the transfer disrupted his prison life and privileges, causing him significant hardships. For example, Jackson's federal habeas petition was dismissed because he lost legal materials and he suffered instability as a result of the improper transfer. Several of his personal items were confiscated or damaged while in Corcoran–SHU, he was denied medical treatment, suffered discrimination and harassment, and was unable to visit with friends and family. Jackson alleges that such acts and losses violated his due process rights under 42 U.S.C. § 1983 as well as his liberty interests guaranteed by the Fourteenth Amendment.

Adopting the magistrate judge's report and recommendation, the district court dismissed Jackson's second amended complaint under Rule 12(b)(6) for failure to make a threshold showing that a federal liberty interest was implicated under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The district court also dismissed Jackson's claims against the prison officials in their official capacities, dismissed Jackson's claim for emotional distress under 42 U.S.C. § 1997e(e) because he failed to allege a physical injury, and held that because the prison officials' conduct did not violate a

constitutional right no further inquiry was required under the qualified immunity analysis.

## II. DISCUSSION

We review Rule 12(b)(6) dismissals *de novo.* The "complaint should not be dismissed unless it appears beyond doubt that [Jackson] can prove no set of facts in support of the claim that would entitle [Jackson] to relief." *Thompson,* 295 F.3d at 895. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### A. Dismissal of Jackson's Second Amended Complaint

■ "It is well-established that'[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'" *Burnsworth v. Gunderson,* 179 F.3d 771, 774 (9th Cir.1999) (alteration in original) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "Under *Sandin* [*v. Conner*], a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Resnick v. Hayes,* 213 F.3d 443, 448 (9th Cir.2000) (alteration in original) (quoting *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293).

The Court in *Sandin* relied on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of the plaintiff's sentence was not affected. *Id.* (quoting *Sandin,* 515 U.S. at 486–87, 115 S.Ct. 2293). *Sandin* makes clear that the focus of the liberty interest inquiry is whether the challenged condition imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293. We review Jackson's second amended complaint under this rubric.

*Sandin* requires a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner. *See Resnick,* 213 F.3d at 448; *Duffy v. Riveland,* 98 F.3d 447, 457 (9th Cir.1996); *Keenan v. Hall,* 83 F.3d 1083, 1088–89 (9th Cir.1996); *Mitchell v. Dupnik,* 75 F.3d 517, 522 (9th Cir.1996). "What less egregious condition or combination of conditions or factors would meet the test requires case by case, fact by fact consideration." *Keenan,* 83 F.3d at 1089.

■ In his second amended complaint, Jackson alleges that the three custody levels in California state prisons—general population, administrative segregation, and the SHU—each materially differ from each other. For example, inmates in general population have contact visits with family and friends, have freedom to move without restraint, can make monthly phone calls, and can possess more personal property in their cells. General population inmates are also better able to care for their health needs, get a job, and learn a trade. Overall, general population is a less stressful

environment than the other two custody levels.

Jackson also alleges material differences between his administrative segregation conditions and the conditions he suffered during his term at Corcoran–SHU. Specifically, Jackson alleges loss of privileges, the confiscation of and damage to personal property, and the distance it created between himself and friends and family. Jackson further alleges that serving the Corcoran–SHU term created a major disruption in his environment when compared to the conditions he experienced as part of the general prison population. Thus, Jackson "covers his bases" regardless of which comparison the court makes—*general population v. Corcoran–SHU* or *administrative segregation v. Corcoran–SHU*.

In *Sandin*, the inmate was sentenced after a hearing to thirty-days' disciplinary segregation in the SHU and had served his thirty-day sentence before the deputy administrator found the misconduct charge unsupported and expunged the inmate's disciplinary record. *Sandin*, 515 U.S. at 475–76, 115 S.Ct. 2293. In this case, the factual scenario is materially different. Jackson was sentenced to Corcoran–SHU and successfully appealed the disciplinary hearing, obtaining an Appeal Response *prior* to his transfer date.

Further, the Court in *Sandin* was reviewing a grant of summary judgment in favor of the government and determined that the inmate had failed to demonstrate sufficient differences between the inmate's disciplinary confinement and his prior administrative confinement. *Id.* at 486, 115 S.Ct. 2293. The inmate in *Sandin* thus had an opportunity to present evidence beyond the allegations in the complaint concerning the differences between the conditions of his confinement. But under Rule 12(b)(6), we ask only whether Jackson sufficiently alleged facts that might support a claim entitling him to relief. Jackson has met that burden.

The prison officials argue that Jackson cannot complain that his Corcoran–SHU confinement violated due process because he has not demonstrated the existence of a liberty interest as required by the Court in *Sandin*. The prison officials rely upon cases where prisons confined inmates *pending* a disciplinary hearing, not after a disciplinary hearing and successful appeal as in Jackson's case. *See Resnick*, 213 F.3d 443; *May v. Baldwin*, 109 F.3d 557, 559–60 (9th Cir.1997). They claim, however, that the only difference between Jackson's case and *May*, for example, is that Jackson was awaiting a *rehearing* rather than an *initial* hearing. However, because the liberty interest consideration under *Sandin* is fact-specific, and *May* has materially different facts, *May* is not dispositive at this stage.

Following our precedent, and construing the complaint liberally, Jackson did allege enough to survive dismissal at this stage. *See Duffy*, 98 F.3d at 457 (remanding for further factfinding by the district court because the limited record prevented a determination as to whether the challenged conditions at issue established a constitutionally protected liberty interest under *Sandin*). *But see Resnick*, 213 F.3d at 448 (affirming a 12(b)(6) dismissal because, unlike Jackson, the plaintiff did not allege that his segregation in the SHU pending his disciplinary hearing materially differed from the conditions imposed on inmates in purely discretionary segregation, nor did he allege that the conditions in the SHU created a major disruption in his environment; thus, based on the complaint, his placement in the SHU was within the range of confinement to be normally expected by prison inmates in relation to the ordinary incidents of prison life). Taken as true and construed in the light most

favorable to Jackson, his allegations form the basis of a due process claim under section 1983.

The present inquiry is better suited for summary judgment. After discovery, the district court may determine whether the transfer and confinement in Corcoran–SHU after a disciplinary hearing sentence has been ordered reissued and reheard constitutes an "atypical and significant hardship," thus infringing upon a protected liberty interest under *Sandin.* If the district court determines that Jackson possessed such a liberty interest, it must then determine whether Jackson was given all process due under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Duffy,* 98 F.3d at 457.

### B. Jackson's First Amendment and Due Process Claims

■ By way of supplemental briefing after the appointment of appellate counsel, Jackson raises arguments that were not presented to the district court. For example, Jackson argues that, liberally construed, Jackson's complaint alleged: (1) a First Amendment right to pursue an inmate appeal of his prison disciplinary conviction, and (2) a sheer denial of due process claim, which avoids the liberty interest analysis under *Sandin* entirely. The prison officials argue that Jackson waived these claims because he argues them for the first time on appeal.

■ The fact that Jackson was pro se both in the district court and initially on appeal cannot be overlooked in this case. Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (reversing a dismissal of a pro se inmate's complaint, yet intimating no view on the merits of his allegations). "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988).

In light of this lenient standard, Jackson's complaint sets forth facts that put the prison officials on notice of the nature of these claims under section 1983. Whether these claims are viable will be for the district court to determine.

### C. Jackson's Claims Against Prison Officials Individually

■ Individual defendants are entitled to qualified immunity unless their alleged conduct violated "clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court held that because Jackson was unable to establish that the prison officials' conduct violated a constitutional right (applying *Sandin* ), further inquiry was unnecessary. Because we reverse the district court's dismissal of Jackson's claims under Rule 12(b)(6), the district court must revisit the qualified immunity defense raised by the prison officials to complete its analysis.

If, upon further discovery, the district court determines that the prison officials violated a protected liberty interest under *Sandin,* "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

### D. Jackson's Claim of Emotional Distress

■■ The district court held that because Jackson failed to allege any physical injury, his claim for emotional distress damages was barred under the Prison Liti-

gation Reform Act (PLRA), 42 U.S.C. § 1997e(e). The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This circuit has recognized that "[i]n drafting § 1997e(e), Congress failed to specify the type, duration, extent, or cause of 'physical injury' that it intended to serve as a threshold qualification for mental and emotional injury claims." *Oliver v. Keller,* 289 F.3d 623, 626 (9th Cir.2002). As such, "for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis.*" *Id.* at 627.

■ Clearly Jackson did not allege a physical injury in his second amended complaint. However, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996). Jackson's complaint alleges only that as a result of his improper transfer to Corcoran–SHU, Jackson was denied medical treatment. In his previous objection to the magistrate judge's findings, however, Jackson claimed that he thought the limited allegation in his complaint would suffice until he presented evidence of his specific ailments at a later date. In that objection, Jackson alleged that he developed lumps behind his ear because of an untreated ear infection, developed chronic hypertension, and contracted hepatitis B.

Upon de novo review, we cannot say that this complaint could not be saved by any amendment. Remand is, therefore, necessary. We direct the district court to grant Jackson leave to amend his com-plaint a third time to specifically include his allegations of physical injury.

**E. Jackson's Official Capacity Claims**

■ The district court dismissed Jackson's claims against the prison officials in their official capacities. It is well-established that officials "sued in their official capacities are not 'persons' within the meaning of § 1983." *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir.1997). Thus, we affirm that portion of the district court's order.

**III. CONCLUSION**

For the reasons set forth herein, we reverse in part and remand, affirming only the dismissal of the claims against the prison officials in their official capacity.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.