James M. MORGAN, Plaintiff,

v.

**MARICOPA COUNTY, Sheriff Joe Arpaio, et al., Defendants.**

**No. CV 01–1982 PHX–LOA.**

United States District Court, D. Arizona.

April 30, 2003.

Tim D. Coker, Law Offices of Tim Coker, Phoenix, AZ, for plaintiff.

Richard A. Stewart, Cary LaMar Lackey, Joseph I. virgil, Maricopa County Attorney's Office, Phoenix, AZ, for defendants.

## ORDER

ANDERSON, United States Magistrate Judge.

This matter arises on Maricopa County's and Sheriff Joe Arpaio's ("Defendants") Motion for Summary Judgment (documents # 24 and # 26), filed on November 15,2002. The parties have consented to full magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). After considering the relevant pleadings [1], the case law, the written arguments of counsel and the entire file, the Court concludes that Plaintiff James M. Morgan failed to exhaust his administrative remedies within the Maricopa County Jail as required by the Prison Litigation Reform Act ("PLRA") prior to filing this lawsuit. Therefore, the Court will grant the motion and dismiss the case in its entirety.

## *BACKGROUND*

In his Complaint, Plaintiff James M. Morgan ("Morgan") alleges a violation of his federal constitutional right to freedom from an unreasonable search by Maricopa County Sheriff Joe Arpaio ("Arpaio") and Maricopa County, a political entity, as a result of an involuntary body cavity search [2] ("cavity search") that occurred in the Madison Street Jail in Phoenix on

---

1. E.g., the subject motion, Defendants' Statement of Facts (doc. # 25), Defendants' Reply (doc. # 30) and Response to Plaintiff's Statement of Facts (doc. # 29), Plaintiff's Opposition to Summary Judgment (doc. # 27) and Plaintiff's Statement of Facts (doc. # 28).

2. It is undisputed that a visual body cavity search consists of a detention officer visually

November 17, 2000. He seeks compensatory damages under 42 U.S.C. § 1983 and § 1986 for the "extreme embarrassment, humiliation, shock, and distress"[3] he allegedly suffered due to the nearby presence of two female detention officers during his cavity search. He does not allege that he sustained any physical injuries during, or related to, the objectionable search.[4] Additionally, Morgan alleges a claim that the Defendants failed to appropriately supervise the jail's detention officers with reckless indifference to the Morgan's rights.

At the time of the subject search, Morgan was in custody as a result of violating the terms of probation imposed upon him as a result of a prior felony conviction. He was arrested for the probation violation on September 29, 2000, entered an admission to violating his probation on October 31, 2000 and was awaiting his final disposition when the subject search occurred. Morgan was eventually given a jail term for violating his probation and was released from custody on August 31, 2001. A month later and over ten months after his constitutional claim arose, Morgan filed suit in state court.

Defendants claim that the cavity search was necessary because jail officials received reliable and credible information that there were a "zip" gun and bullets located somewhere in the jail and that

inmate violence could be imminent.[5] A bullet was found in the Jail which, Defendants argue, justified a non-routine search for contraband throughout the entire jail and every inmate. On the day of the search, the entire jail was placed on a level 4 control override to conduct a non-routine search of the entire jail, including searches of every inmate. A male officer conducted Morgan's cavity search while Morgan was in his cell. Tiffany Acuna, a female detention officer, and, perhaps another female staff member, were outside Morgan's cell, logging all items found during the search. During Morgan's cavity search, another male officer stood in the doorway of Morgan's cell, allegedly blocking Acuna's view of Morgan. Officer Acuna has declared under oath that at no point did she see Morgan nude.[6] Morgan acknowledges that 17 other inmates in his pod of cells were strip searched but claims he was the only one in his pod who experienced a body cavity search.[7] No contraband was found on Morgan or in his cell.

On November 17, 2002, and pursuant to the Maricopa County Sheriff's Office's ("MCSO") inmate grievance procedure, Morgan filed a written grievance, claiming $1500.00 as compensation for his humiliation due to the presence of female detention officers during the subject search.[8] As his grievance form and the affidavit of

---

inspecting the inmate's mouth, checking under the inmate's genitals and a visual inspection of the inmate's anus. The detention officer does not touch the inmate. Rather, the inmate is required to do the work to assist in the inspection. There is no penetration during the search.

**3.** See, Complaint, ¶ 16 (doc. # 1).

**4.** Defendants also seek summary judgment on other grounds, such as, the PLRA precludes recovery for custodial mental or emotional damages without a prior showing of physical injury. See, 42 U.S.C. § 1997(e)(e); *Zehner v. Trigg*, 133 F.3d 459 (7th Cir.1997). The

Court need not address each and every argument for summary judgment in light of the Court's ruling on the exhaustion issue.

**5.** See, ¶ 4, affidavit of Lt. Robert Barcelo, Exhibit B, Defendants' Statement of Facts (doc. # 25).

**6.** See, ¶ 10, Acuna's affidavit, Exhibit C, Defendants' Statement of Facts (doc. # 25).

**7.** See, ¶ 4, Morgan's affidavit, Exhibit C, Plaintiff's Statement of Facts (doc. # 28).

**8.** See, Exhibit D, Defendants' Statement of Facts (doc. # 25).

Raveille Donaldson indicate,[9] Morgan's grievance was informally resolved between Morgan and the Jail's shift supervisor, Sgt. J. Myers, with the notation in paragraph IV: "Discussed as a one time incident will ensure this will not occur with present staff." Sgt. Myers initialed the preprinted entry: "Forward to Hearing Officer for file (informally resolved)." Both Sgt. Myers and Morgan purportedly executed the document on November 30, 2000. No appeal was taken nor were any other proceedings held on this grievance. Over ten months later on September 27, 2001, Morgan filed suit in the Maricopa County Superior Court which was timely removed to this court.

The MCSO's Rules and Regulations For Inmates, effective on and after July 1, 1998, contain a detailed, step-by-step grievance process that inmates must exhaust before seeking judicial relief against the MCSO, the Sheriff or any of his staff.[10]

---

9. See, ¶ 7, affidavit of Raveille Donaldson, Exhibit D, Defendants' Statement of Facts (doc. # 25).

10. "GRIEVANCE PROCEDURES (OTHER THAN MEDICAL)

NOTE: The Federal District Court, pursuant to General Order 173, has ruled the Maricopa County Jail System's Inmate Grievance Procedure to be an "effective" and "efficient" means of resolving inmate grievances. The Federal Court has ordered that any inmate in a Maricopa County Jail must use all steps outlined in the Inmate Grievance Procedure before filing a complaint in Federal District Court. If you fail to complete the procedure, the Federal District Court will take no action on your complaint for 90 days.

The Maricopa County Sheriff's Office provides you with a system to register your valid complaints about procedures and conditions in the jails. You must make a good faith effort to resolve your complaint at the lowest possible level in the grievance procedure, and you may not bypass any of the steps listed below. However, if the staff fails to respond to your grievance within the time allowed, you may proceed to the next step in the process. Time limits may be extended upon request.

When you have a problem or a complaint:

♦ Ask for a Grievance Form from an officer. Complete the form and include your proposed solution. You may not include more than one grievance on each form. Submit the completed form to detention staff within 48 hours of the event being grieved. The officer will sign the form and return one copy to you. If the officer cannot resolve the grievance within four calendar days, he will forward it to the Shift Supervisor for review.

♦ If the shift Supervisor determines that the grievance cannot be resolved within four calendar days of the time he received it, or your proposed solution is not acceptable, he will forward your form to the Hearing Officer.

♦ The Hearing Officer will then try to resolve the grievance within nine calendar days after receiving it. If you do not receive a response within those nine calendar days, or if you feel the problem has not been resolved, you may file an Institutional Grievance Appeal with the Jail Commander. You must complete and submit the appeal within 24 hours after receiving the Hearing Officer's response.

♦ The Jail Commander will respond to an Institutional Grievance Appeal within seven calendar days after he receives it. If the problem still is not resolved, and you wish to appeal to the External Referee, you have 24 hours from the day you receive the Jail Commander's response to file an Inmate External Grievance Appeal Form. You are required to attach your yellow copies of the Grievance Form and the Grievance Appeal Form (including all responses) to the External Appeal Form when you submit it.

♦ NOTE: The Jail Commander may summarily dismiss repetitive and frivolous grievances. You CANNOT grieve disciplinary action or matters that pertain to other inmates.

♦ A designated person will review and forward all External Grievance Appeals to an External Referee within seven calendar days after receiving them.

♦ If the designated person concludes that an External Grievance Appeal is frivolous, repetitive, or related to a nongrievable issue, he will recommend to the External Referee that the appeal be dismissed.

Like most grievance systems, it is a sequential review process beginning with the inmate's submittal to any of the detention staff of a timely grievance on the Jail's approved form. If the detention officer does not timely resolve the inmate's complaint within four calendar days of its submission, the inmate may proceed to the next step. If the shift supervisor determines that the grievance cannot be resolved within four calendar days of its submission, the grievance is then forwarded to the hearing officer at the next level. If the matter is not resolved to the inmate's satisfaction within the next nine calendar days, the inmate may file an institutional grievance appeal with the jail commander. If the matter remains unresolved to the inmate's satisfaction at this higher level, the inmate may appeal to the external referee, who will review the grievance and any recommendations and will provide the inmate with a written opinion within 18 calendar days of receiving the appeal. The external referee's response and written decision conclude the formal inmate grievance procedure. The MCSO's Rules and Regulations make clear that an inmate "must use all steps outlined in the Inmate Grievance Procedure before filing a complaint in Federal District Court".[11]

## SUMMARY JUDGMENT

A Court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), FRCvP; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada*

*Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Jesinger*, 24 F.3d at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), FRCvP; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.* at 255, 106 S.Ct. at 2513 [citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970) ].

Whatever facts which may establish a genuine issue of fact must *both* be in the district court's file and set forth in the response. *Carmen v. San Francisco Uni-*

---

♦ The External Referee will review the grievance and recommendations and give you his written opinion within 18 calendar days of receiving the appeal. If his decision will be delayed, he will inform you in writing. The External Referee's response and written decision end the formal inmate grievance procedure."

11. *Id.*

*fied School District,* 237 F.3d 1026, 1029 (9th Cir.2001). The trial court:

"may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."

*Id.* at 1031.

■ Contrary to a few circuits, the Ninth Circuit concurs with five other circuits that nonexhaustion under § 1997e(a) of the PLRA does not impose a pleading requirement on a prisoner and holds that § 1997e(a) creates a defense wherein defendants have the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003) *pet. for cert.* filed April 1, 2003; *Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir.2002); *Foulk v. Charrier,* 262 F.3d 687, 697 (8th Cir.2001); *Jackson v. District of Columbia,* 254 F.3d 262, 267 (D.C.Cir.2001); *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999). Unlike the defendants in *Wyatt v. Terhune, supra.,* Defendants herein have met their burden of establishing that Morgan did not completely exhaust the Jail's administrative remedies before seeking judicial relief.

## DISCUSSION

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Congress has mandated exhaustion ... regardless of the relief offered through administrative procedures." *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). A prisoner "seeking only money damages must complete a prison administrative process" that, like the Maricopa County Jail's administrative grievance process, "could provide some sort of relief on the complaint stated, but no money." *Id.* at 1821.

Morgan disputes that Defendants are entitled to summary judgment for failure to exhaust administrative remedies (1)because he "is not complaining about prison conditions, but about a single incident violating the Fourth Amendment," [12] and (2) because he was not in custody at the time he filed his Complaint. [13] Both arguments, however, fail.

■ In *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002),

---

12. See, page 2, Plaintiff's Opposition to Summary Judgment (doc. # 27)

13. Apparently recognizing its legal futility, Morgan does not argue that he exhausted his administrative claim by filing a grievance pursuant to the MCSO's Rules and Regulations and completing only the first step of the jail's multi-step grievance process. See, *Snow v. Terhune,* 2002 WL 257841 (N.D.Cal.2002)(prisoner did not totally exhaust his claim by failing to proceed beyond the first level of review of California's prison administrative process); *Rivera v. Whitman,* 161 F.Supp.2d 337, 340–343 (D.N.J. 2001)(§ 1997e(a) compels a "total exhaustion" rule); *Flanagan v. Maly,* 2002 WL 122921, at *2 (S.D.N.Y.2002)( the prisoner "must pursue his challenge to the conditions in question through the highest level of administrative review prior to filing his suit" in federal court).

the U.S. Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [14] This requirement also extends to cases, such as Morgan's, where a plaintiff seeks a remedy not available through the administrative process, such as monetary damages. *Booth v. Churner*, 532 U.S. at 733–34, 121 S.Ct. 1819. *Nussle* mandates that every claim asserted by a prisoner must first be grieved administratively before seeking judicial relief. Like Morgan's claim of a constitutional violation, the plaintiff in *Nussle* filed a § 1983 action, claiming that corrections officers singled him out for a beating in violation of the Eighth Amendment's ban on cruel and unusual punishments. *Nussle*, 534 U.S. at 519, 122 S.Ct. 983.

In holding that the plaintiff failed to exhaust the prison's administrative remedies in *Nussle*, the Supreme Court explained its reasons for requiring exhaustion as a mandatory condition precedent to seeking judicial relief:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Booth*, 532 U.S., at 737, 121 S.Ct. 1819. In other instances, the internal review might "filter out some frivolous claims." *Ibid.* And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. See *ibid.*; see also *Madigan*, 503 U.S.[140,] 146, 112 S.Ct. 1081.

*Nussle*, 534 U.S. at 524–525, 122 S.Ct. 983.

■ Morgan next argues that the PLRA's exhaustion requirement of § 1997e(a) does not apply to him because he was not in custody at the time he filed his Complaint. He provides neither case-law authority nor any argument to support his novel argument. Defense counsel, however, cites *Zehner v. Trigg*, 952 F.Supp. 1318 (S.D.Ind.1997), affirmed by *Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997) as corroboration that § 1997 applies to suits by prisoners arising while the prisoner is in custody, regardless of whether the prisoner is released prior to commencing a civil action. Clearly, Morgan's claim arose while he was incarcerated and is directly related to his incarceration in the Madison Street Jail.

■ Commendably, defense counsel ethically identifies the Ninth Circuit case that arguably supports Morgan's position with its overly broad language.[15] *Page v. Tor-*

---

**14.** Although Morgan filed this action in state court five months before the Supreme Court announced its decision in *Porter v. Nussle*, the broad exhaustion requirement announced in *Nussle* applies with full force to a litigant, such as Morgan, who brought suit prior to the date of its decision. See, *Harris v. Totten*, 244 F.Supp.2d 229, 232 fn. 2 (S.D.N.Y.2003); *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.").

**15.** "...we hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of

*rey*, 201 F.3d 1136 (9th Cir.2000) is, however, factually distinguishable from the case at bar. Also see, *Moore v. Baca*, 2002 WL 31870541 (C.D.Cal.2002). Unlike Morgan who was serving jail time due to a probation violation for a criminal offense when his § 1983 claim arose, the plaintiff in *Page* was civilly committed pursuant to California's Sexually Violent Predators Act in the Atascadero State Hospital when some of his constitutional violations were alleged to have occurred. Secondly, in 1999 when *Page* was decided, the Supreme Court had not yet decided *Booth v. Churner* and *Porter v. Nussle* which came down in 2001 and 2002, respectively. The Ninth Circuit, therefore, did not have the benefit of the Supreme Court's analysis of the PLRA and Congress' salutary reasons for requiring complete exhaustion before a prisoner may seek judicial relief for claims arising during the prisoner's incarceration. Interpreting the PLRA as inapplicable to former prisoner's claims which arose during the prisoner's incarceration if a prisoner waits to file suit, like Morgan did, until a month after his release from custody and over ten month's after the cause of action arose would nullify Congress' intent in passing the PLRA. The absurdity of such an interpretation is reason enough to reject it. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). This argument is also rejected.

Having failed to completely exhaust the Jail's administrative remedies,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (docs. # 24 and # 26) is **GRANTED** and hereby dismissing this case in its entirety. The Clerk is directed to terminate the case.

42 U.S.C. § 1997e and 28 U.S.C. § 1915."

*Page v. Torrey*, 201 F.3d at 1140.