Rainwater v. NHSP Warden          CV-03-216-M    02/19/04
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Curtis Rainwater,
      Plaintiff

      v.                                Civil No. 03-216-M
                                        Opinion No. 2004 DNH 036
Jane Coplan, Warden of the
New Hampshire State Prison,
      Defendant


                         **O R D E R**


      Curtis Rainwater, a New Hampshire State Prison inmate, has

sued Jane Coplan, Warden of the New Hampshire State Prison,

pursuant to 42 U.S.C. § 1983, for violating his First Amendment

right to freely exercise his religion.  Plaintiff asserts that

defendant held him in quarantine for the first five months of his

incarceration, in the special housing unit ("SHU"), after he

refused, on religious grounds, to allow a blood sample to be

drawn.  Before the court is defendant's motion.  Plaintiff

objects.  For the reasons given below, defendant's motion is

granted.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)).

> Not every factual dispute is sufficient to thwart
> summary judgment; the contested fact must be "material"
> and the dispute over it must be "genuine."  In this
> regard, "material" means that a contested fact has the
> potential to change the outcome of the suit under the
> governing law if the dispute over it is resolved
> favorably to the nonmovant.  By like token, "genuine"
> means that the evidence about the fact is such that a
> reasonable jury could resolve the point in favor of the
> nonmoving party.

Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

In defending against a motion for summary judgment, "[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994)). When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro, 261 F.3d at 94 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

From December 19, 2002, until May 20, 2003, Rainwater was held in SHU, on quarantine status. He was quarantined for a considerably longer period than typical for new arrivals. But, that was because he refused to allow prison officials to draw a blood sample for diagnostic medical testing. Rainwater says he refused to allow his blood to be drawn because the procedure conflicts with his Native American religious convictions.

Matt Moyer, unit manager of SHU, says, by affidavit, that Rainwater told him that he was being held in quarantine status because of his failure to allow a blood sample to be drawn, but Rainwater never sent an "Inmate Request Slip" to Moyer disclosing his religious objection to blood drawing or complaining about his extended quarantine. (Moyer Aff. ¶ 3; Sheppard Aff. ¶ 9.) The record does, however, contain two written communications from Rainwater on the subject. In a letter to the warden dated May 17, 2003, Rainwater addressed three topics, including his religion-based objection to having a blood sample drawn. (Sheppard Aff., Att. 2.) And, Rainwater sent an Inmate Request Slip, date stamped May 21, 2003, to Commissioner Phil Stanley, raising his objection to having blood drawn. (Sheppard Aff., Att. 3.) In a response dated June 6, a representative of the commissioner told plaintiff that he was "in R & D [Reception and Diagnostic] awaiting a C-3 bed." (Sheppard Aff., Att. 3.)

**Discussion**

Defendant moves for summary judgment on grounds that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), a provision of the Prison

4

Litigation Reform Act ("PLRA"). Plaintiff counters by submitting evidence purporting to show that he did, indeed, exhaust his administrative remedies.[1]

According to the exhaustion provision of the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Even though an inmate seeks only relief not available through his prison's administrative process, the inmate remains obligated to exhaust the administrative process, so long as it "could provide some sort of relief on the complaint stated, but no money." Booth v. Churner, 532 U.S. 731, 734

---

[1] Specifically, plaintiff submitted the canary-colored copy of a "Grievance Form" dated May 1, 2003. On that form, plaintiff stated his religious objection to having blood drawn. However, the sections of the form in which the director (warden) and the commissioner are to describe their responses to the grievance are both blank. Moreover, the bottom of the form contains the following instructions: "Forward all three copies. White will be filed in offender records, canary to responder and pink to grievant." Plaintiff's submission of the canary copy rather than the pink copy, coupled with the absence of any response from the warden or commissioner, tend to undercut the reliability of the form as evidence of administrative exhaustion.

(2001) (holding that inmate bringing excessive force claim had to exhaust his administrative remedies, even after being transferred out of the prison in which he was allegedly subjected to excessive force).

When an inmate files suit without properly exhausting his or her administrative remedies, dismissal is ordinarily required.[2] See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002). When a prison's administrative remedies include a grievance process, "strict compliance . . . is required or else dismissal must follow inexorably." McCoy v. Goord, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citations and internal question marks omitted); see also Houze v. Segarra, 217 F. Supp. 2d 394, 397) (S.D.N.Y. 2002) ("Prison officials are entitled to require strict compliance with an existing grievance procedure.") (quoting Hemphill v. New York, 198 F. Supp. 2d 546, 549-50 (S.D.N.Y. 2002)). Strict compliance includes completing all steps of the grievance procedure, even when an inmate is released from custody prior to filing his complaint. See Morgan v.

---

[2] This case does not involve a "mixed complaint," which raises different issues with regard to whether the entire complaint must be dismissed or only the unexhausted claims.

<u>Maricopa County</u>, 259 F. Supp. 2d 985 (D. Ariz. 2003). The strict compliance requirement also bars an inmate from claiming exhaustion when he has bypassed steps in the administrative process. <u>See</u>, <u>e.g.</u>, <u>Labounty v. Johnson</u>, 253 F. Supp. 2d 496, 500-01 (W.D.N.Y. 2003) (citations omitted); <u>Jeanes v. U.S. Dep't of Justice</u>, 231 F. Supp. 2d 48, 51 (D.D.C. 2002) (citations omitted).

Defendant contends that because plaintiff failed to strictly comply with the grievance procedure available to NHSP inmates, he has not exhausted his administrative remedies for purposes of the PLRA. The court agrees.

The NHSP grievance procedure, discussed in detail in <u>LaFauci v. New Hampshire Department of Corrections</u>, No. 99-253-M, 2001 WL 1570932 (Oct. 31, 2001 D.N.H.), requires an inmate to follow a sequential process involving: (1) an Inmate Request Slip, directed to the correctional officer of lowest rank who can respond to the issue raised and filed within thirty days of the event complained of; (2) a Grievance Form, directed to the warden and filed within thirty days of the response to an Inmate Request

7

Slip; and (3) a Grievance Form, directed to the commissioner and filed within thirty days of the warden's response to a Grievance Form.[3] The second and third steps in the process are, in essence, appeals of the decisions rendered in the first and second steps.

Here, plaintiff never properly initiated the grievance process by addressing an Inmate Request Slip to the lowest level correctional officer who could respond. Based upon the material submitted by defendant, plaintiff's first communication regarding his religious objection to blood drawing was a letter to the warden, followed by an Inmate Request Slip directed to the commissioner. Plaintiff's May 17, 2003, letter to the warden did not comply with the grievance procedure's requirements because it was not preceded by an Inmate Request Slip addressed to a unit

_____

[3] The time limitations applicable to the three steps in the grievance process were added after LaFauci was decided. At least one court has excused the exhaustion requirement when the prisoner would be time barred from pursuing an administrative remedy after dismissal. See Johnson v. True, 125 F. Supp. 2d 186, 189 (W.D. Va. 2000). But the better view is that "it would be contrary to Congress' intent in enacting the PLRA to allow prisoners to wait until their time to bring an administrative action had expired and then bring an action in court." Timmons v. Pereiro, No. 00 Civ. 1278(LAP), 2003 WL 179769, at *2 (S.D.N.Y. Jan. 27, 2003) (citing Giano v. Goord, 250 F.3d 414, 417 n.3 (6th Cir. 2001)).

manager or other lower-level prison official and because it was not submitted on a Grievance Form. Likewise, Plaintiff's May 21, 2003, communication to the commissioner did not comply with the grievance procedure because it was not an appeal of a decision by the warden and because it was not submitted on a Grievance Form. Plaintiff's failure to properly invoke the NHSP grievance procedure is fatal to this claim. See McCoy, 255 F. Supp. 2d at 246.

Furthermore, the Grievance Form plaintiff submitted with his objection to summary judgment does not help his case. Leaving aside its dubious reliability, see note 1, supra, that form is dated May 1, 2003, making it the earliest complaint document in the record. Once again, because a Grievance Form must be preceded by an unsuccessful attempt at redress by means of an Inmate Request Slip, the May 1 Grievance Form did not effectively initiate the NHSP grievance procedure. Moreover, a Grievance Form that does not include responses from the official(s) to whom it was addressed is facially insufficient to demonstrate exhaustion of administrative remedies. An incomplete Grievance Form has presumptively not made its way through the established

system and cannot, therefore, standing alone, document a final disposition of the prisoner's complaint, which is essential to exhaustion.  See Tolbert v. McGrath, No. C 02-5456 SI(PR), 2002 WL 31898207, at *1 (N.D. Cal. Dec. 27, 2002) ("Merely sending in [an] appeal to the highest level is not sufficient; the prisoner must wait until he receives a response from the highest level of review before filing a federal complaint."); cf. Harris v. Totten, 244 F. Supp. 2d 229, 234 (S.D.N.Y. 2003) ("Harris has still not exhausted his administrative remedies pursuant to the PLRA since there has been no final disposition of his grievance at the administrative level"); Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000) (explaining that exhaustion is demonstrated by production of "cop[ies] of the applicable administrative dispositions to the complaint" or, in the alternative, a specific description of the administrative proceeding and its outcome).

Finally, the fact that plaintiff was released from quarantine shortly after he ineffectively began the NHSP grievance process does not excuse the exhaustion requirement. While this might appear to be a situation in which the

10

administrative process was unable to provide any sort of relief once plaintiff was released from quarantine, <u>Booth</u> suggests otherwise. In that case, Booth, a prisoner, brought an excessive force action, claiming violation of his right, under the Eighth Amendment, be free from cruel and unusual punishment. 532 U.S. at 734. In his complaint, "Booth sought various forms of injunctive relief, including transfer to another prison, as well as several hundred thousand dollars in money damages." <u>Id.</u> By the time the court of appeals affirmed the trial court's decision to dismiss Booth's complaint for failure to exhaust, Booth had been transferred to another prison. <u>Id.</u> at 735. Even so, the Supreme Court held that exhaustion was required, identifying several forms of relief the administrative process might produce: (1) the satisfaction of being heard, coupled with the possibility of administrative change; and (2) the opportunity to hone arguments prior to filing suit. <u>See</u> <u>id.</u> at 737.

Based upon Congress's clear, strong mandate of exhaustion, <u>see</u> <u>id.</u> at 739-41; <u>see also</u> <u>Porter v. Nussle</u>, 534 U.S. 520, 523-25 (2002), and the Supreme Court's opinion in <u>Booth</u>, this court cannot say that the administrative process offered plaintiff no

relief whatsoever once he was released from quarantine. After all, unlike Booth, plaintiff in this case remains incarcerated in the same facility that he alleges violated his constitutional rights. Thus, the administrative process held out the possibility of providing administrative changes favorable to plaintiff's religious observance. In sum, this court is bound by Booth, and under that precedent, plaintiff is obligated to exhaust his administrative remedies before filing suit here.

For the reasons given above, defendant's motion for summary judgment (document no. 23) is granted, and plaintiff's complaint is dismissed without prejudice. The Clerk of the Court shall enter judgment in accordance with this order and close the case. Because the case is dismissed, plaintiff's pending motions (documents no. 20, 21, 25, and 28) are all moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 19, 2004

12

cc:  Curtis Rainwater
     Nancy J. Smith, Esq.