Jeffrey **KRITENBRINK**, and Douglas Leiter, Plaintiffs,

v.

Jackie **CRAWFORD**, Rex Reed, Linda S. Hilton, Steven Suwe, Glen Wharton, Danielle Debtwiller, Edgar Miller, and Connie Bisbee, Defendants.

No. CV–N–03–0235–ECR(RAM).

United States District Court,
D. Nevada,
Reno, Nevada.

April 6, 2004.

Donald Y. Evans, Reno, NV, for Plaintiffs.

Daniel Wong, Nevada Attorney General's Office, Carson City, NV, for Defendants.

### *Order*

EDWARD C. REED, JR., Senior District Judge.

The order of the court (# 29), dated and filed on March 19, 2004, is amended to read as follows:

This case arises out of the alleged failure of defendants Jackie Crawford, Rex Reed, Linda Hilton, Steven Suwe, Glen Wharton, Danielle Detweiler, Edgar Miller, and Connie Bisbee (collectively "defendants") to provide adequate due process to plaintiffs Jeffrey Kritenbrink ("Kritenbrink") and Douglas Leiter ("Leiter") by allegedly denying plaintiffs the means to challenge their classification as "sexual offenders."[1] Plaintiffs seek monetary damages, declaratory and injunctive relief.

Defendants Jackie Crawford, Rex Reed, Linda Hilton, Steven Suwe, Glen Wharton, and Danielle Detweiler filed a motion to dismiss, or in the alternative, for summary judgment (# 10). Defendants Edgar Miller (# 17) and Connie Bisbee (# 25) joined in the motion. Plaintiffs filed an opposition (# 13) and defendants replied (# 15). Defendants' motion to dismiss, or in the alternative, for summary judgment (# 10) is ripe. We now rule on the motion.

### Background

On October 24, 1997, plaintiff Kritenbrink was sentenced to 28 to 120 months incarceration in the custody of the Nevada Department of Corrections ("NDOC") for pleading guilty to felony burglary charges. The NDOC housed Kritenbrink at both the Northern Nevada Correctional Center and the Warm Springs Correctional Center. During his incarceration, the NDOC labeled Kritenbrink as a "sex offender" based upon an arrest in Anchorage, Alaska on August 5, 1977. Kritenbrink's classification as a sex offender allegedly precluded his eligibility for minimum security classification, and thus prevented him from serving in "work camp." Work camp allegedly allows prisoners to receive day-for-day work credits, which could facilitate an early release from prison.

Although Kritenbrink attempted to challenge his classification as a sex offender because the Alaskan authorities dismissed the underlying sex offense charges on September 8, 1977, Kritenbrink claims that the NDOC provided no adequate due process procedures for him to challenge his sex offender classification. Kritenbrink provided copies of the judgment of dismissal of the sex charge and a letter from his former legal counsel that detailed the facts, circumstances, and ultimate dismissal of the sex charge. Although Kritenbrink initiated various attempts to change his classification status—including having his lawyer, Erik Johnson, send a letter to Director Jackie Crawford, having his mother write a letter, and talking with his caseworkers—the NDOC officials did not tell Kritenbrink that a procedure existed to challenge his classification. Eventually, Kritenbrink was paroled on November 12, 2002, before he was able to formally challenge his classification.

Plaintiff Leiter is also an inmate in the custody of the NDOC and is currently housed at the Northern Nevada Correctional Center. The NDOC classifies Leiter as a "sex offender," and, despite Leiter's attempts to challenge his classification, he has allegedly been told that there are no means to challenge his classification.

Since Kritenbrink is a former prisoner and Leiter is a current prisoner, we must

---

1. Plaintiffs filed a notice of erratum (# 6), which corrected the names of Steven Suwe (from "Defendant Suwe"), Glen Whorton (from "Defendant Glenn Wharton"), and Danielle Debtwiller (from "Defendant Detweiler"). It is apparent from the notice of joinder (# 17) that Defendant Miller is Edgar Miller. Furthermore, Defendant Brisbee joined (# 25) the motion to dismiss as Connie Bisbee.

analyze their cases under separate legal doctrines. We begin with a short analysis of Leiter's claims.

### Exhaustion for Prisoners under the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), which governs prisoner suits such as Leiter's, states:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

■■■ Failure to exhaust administrative remedies under 42 U.S.C. § 1997e is an affirmative defense that should be raised in an unenumerated Rule 12 motion.[2] *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Defendants bear the burden of raising and proving the absence of exhaustion. *Id.* Although failure to exhaust non-judicial remedies that are not jurisdictional should be treated as a matter of abatement, a court may look beyond the pleadings and decide disputed issues of fact in deciding a motion to dismiss for failure to exhaust non-judicial remedies. *Id.* at 1119–20. The proper remedy for failure to exhaust a claim is dismissal of that claim without prejudice. *Id.* at 1120.

### Leiter Failed to Exhaust

Defendants claim that Leiter had an available administrative remedy in Administrative Regulation ("AR") 740. The current version of AR 740, which became effective on September 2, 2002, provides that "[i]nmates may use the Inmate Grievance System to resolve addressable inmate claims including, but not limited to personal property, property damage, personal injuries or any other tort claim or *matters relating to conditions of institutional life.*" (AR 740.02, Section 1.2.1, Defs.' Mot. to Dismiss, Ex. B (emphasis added).) The former version of AR 740, which was effective from January, 21, 1992, until September 1, 2002, stated that:

> I. Grievability
> 1. Grievable
> The following matters shall be grievable by inmates.
> a. The substance, interpretation, and application of policies, rules and procedures of the institution, facility or the Department, including but not limited to *classification decisions* and property claims.

(Former AR 740, Section V(I)(1)(a), Defs.' Mot. to Dismiss, Ex. A (emphasis added).)

Former AR 740 also provided specifically for classification grievance remedies:

> J. Remedies
> The grievance procedure shall afford a successful grievant a meaningful remedy. Although available remedies may vary among institutions/facilities, [a] reasonable range of meaningful remedies at each institution/facility is necessary. Remedies may include, but are not limited to, the following:
> * *
> 6. Classification grievances
> Appropriate and prompt classification action (e.g., transfer, reduction of custody, award of furlough, change of work assignment).

(Former AR 740, Section V(J)(6), Defs.' Mot. to Dismiss, Ex. A.)

The affidavit of Jim Benedetti, who is the Associate Warden of Programs at the

---

**2.** Courts use the term "unenumerated Rule 12(b) motion" or "nonenumerated Rule 12(b) motion" because the motion is not brought under any of the seven numbered subparts of Rule 12(b) of the Federal Rules of Civil Procedure. *See Ritza v. Int'l Longshoresmen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir.1988).

Northern Nevada Correctional Center and has twenty-one years of experience at NDOC, states that "[a]n inmate could file an inmate grievance on classifications issues under the former A.R. 740 and can file an inmate grievance under the current A.R. 740." (Aff. of Jim Benedetti, Attach. to Defs.' Mot. to Dismiss.)

■ Since we can decide disputed issues of fact in deciding whether Leiter exhausted and Leiter presented no evidence to counter the affidavit of Jim Benedetti that an administrative remedy existed, we find that Leiter's claim must fail.[3] *See Wyatt,* 315 F.3d at 1119–20. According to the evidence presented, Leiter had a method to grieve his classification under the former AR 740, and he continues to have an administrative grievance procedure under the current AR 740. Leiter did not file such a grievance. (*See* Aff. of Rosemary Seals (no classification grievance filed by Leiter at Lovelock Correctional Center) & Aff. Of Jim Benedetti (no classification grievance filed by Leiter at Northern Nevada Correctional Center), Attach. to Defs.' Mot. to Dismiss.) Therefore, Leiter's claim is foreclosed by the exhaustion requirement of the PLRA, and we must dismiss his claim without prejudice.

### Exhaustion for Former Prisoners under the PLRA

The plain language of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. Section 1983], or any other Federal law, by a *prisoner* confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA explicitly defines a "[p]risoner" as follows:

> As used in this section [42 U.S.C. Section 1997e], the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

*Id.* § 1997e(h); *see* 28 U.S.C. § 1915(h) (same definition of "prisoner" in relation to proceedings *in forma pauperis* ).

Although some courts have held that the PLRA's exhaustion requirement applies to preclude unexhausted claims brought by former prisoners involving prison conditions, *see Morgan v. Maricopa County,* 259 F.Supp.2d 985, 992 (D.Ariz.2003); *Zehner v. Trigg,* 952 F.Supp. 1318, 1327 (S.D.Ind.1997), we believe that the plain language of the statute compels us to conclude that the exhaustion requirement applies only to persons who, "at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses." *See Page v. Torrey,* 201 F.3d 1136, 1139–40 (9th Cir.2000) (reading the definition of prisoner narrowly from the plain text of the statute and deciding that a person civilly committed to a State Hospital is not a prisoner under the PLRA because his civil commitment was subsequent to and was not part of his conviction).

In broad language that was not completely necessary to decide the issue at

---

**3.** Although most of the evidence in the record relates to Kritenbrink's claim, we find that Leiter also had fair notice of his opportunity to develop the record on the exhaustion issue as there are several pieces of evidence in the record with respect to plaintiff Leiter's claim. *See Wyatt,* 315 F.3d at 1120 n. 14 ("[I]f the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust—a procedure closely analogous to summary judgment—then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record.").

hand and was partially dicta, the *Page* Court relied on the plain language of the statute in stating that "we hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e and 28 U.S.C. § 1915." *Id.* at 1140. Although *Morgan* distinguished *Page* both factually (*Page* involved a person confined to an institution and not a former prisoner) and legally (interpreting two superceding Supreme Court opinions postdating *Page*—*Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) and *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)—that support a broad reading of the exhaustion requirement), it appears that the other Circuits to address this issue have relied on the plain text of the statute to determine that the PLRA does not apply to former prisoners. *See Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir.1998) ("The statutory language does not leave wriggle room; a convict out on parole is not a 'person incarcerated or detained in any facility ....' ") (quoting 42 U.S.C. § 1997e(h)); *Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999) (analyzing Section 1997e's legislative history and disagreeing with appellees-defendants that strict, literal adherence to the language of Section 1997e would give preferential treatment to former prisoners over current prisoners in contravention of Congress' intent, and holding that "litigants ... who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision").

■ Although there are good policy reasons, outlined in *Booth, Porter*, and *Morgan*, for requiring former prisoners to exhaust under the PLRA, we are compelled by the plain language of the statute to follow the Ninth Circuit's interpretation of 42 U.S.C. sections 1997e(a) and (h) in *Page* by holding that the exhaustion requirement does not apply to former prisoners. We note that this interpretation is in accord with the other Circuits that have addressed this issue. Therefore, under the plain language of the statute, we conclude that the PLRA's exhaustion requirement does not apply to former prisoners.

Since Kritenbrink is a former prisoner who is not currently "incarcerated or detained in any facility," he is not a "prisoner" under 42 U.S.C. § 1997e(h) and he is not subject to Section 1997e(a)'s exhaustion requirement. Therefore, Kritenbrink is not required to exhaust under the PLRA and we must analyze the merits of his claim.

## Due Process Analysis

Defendants argue that Kritenbrink has no liberty interest in a particular classification. Kritenbrink counters that "[t]his case is about the failure of the NDOC system to provide a means to give inmates their Constitutional due process rights when being classified as a sex offender which results in them being ineligible for work camp, which in turn results in them being ineligible to receive work credits which would then result in early release from prison." (Pls.' Opp'n at 8–9.) Kritenbrink seems to be arguing that the defendants violated his procedural due process rights by not providing him a means to challenge his classification. However, the complaint does allege a "liberty interest in obtaining minimum custody classification." Therefore, we must assess what liberty interest, if any, that Kritenbrink possesses.

## Liberty Interest

Prisoners are entitled to the protections of procedural due process only with respect to "deprivation[s] of interests encompassed by the Fourteenth Amendment's

protection of liberty and property." *Neal v. Shimoda,* 131 F.3d 818, 827 (9th Cir.1997)(quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Therefore, we first briefly analyze whether Kritenbrink has a liberty interest in his classification. *Id.* ("Our examination of this claim thus requires us to answer two questions: (1) Is there such a liberty interest? and (2) If so, what process is due?"). Under the Fourteenth Amendment, "[a] protected liberty interest in avoiding prison disciplinary sanctions can arise either from the Due Process Clause itself or from state law." *Torres v. Fauver,* 292 F.3d 141, 150 (3d Cir.2002).

### Liberty Interest in Classification from the Due Process Clause

If " 'the conditions or degree of confinement to which a prisoner is subjected [are] within the sentence imposed upon him' and do not otherwise violate the Constitution[,]" then no liberty interest arising from the Due Process Clause is implicated. *Id.* (quoting *Fraise v. Terhune,* 283 F.3d 506, 522 (3d Cir.2002) (internal quotation marks and citations omitted)). "In other words, where there is no state-created liberty interest, the Due Process Clause applies only if the restraints at issue exceed the prisoner's sentence 'in such an unexpected manner as to give rise to protection by the Due Process Clause of [their] own force' and do not violate any other constitutional provision." *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

In this case, Kritenbrink's classification as a "sex offender" allegedly caused him (1) to be confined in a higher security prison, and (2) to lose an opportunity to attend "work camp" in order to achieve work credit and an earlier release from prison. Clearly, Kritenbrink's confinement in a higher security prison did not exceed his sentence in an unexpected manner. *See Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that prisoners do not have constitutional right to be housed at particular institution even if the degree of confinement differs between institutions). Likewise, the lack of opportunity to attend "work camp" and procure the attendant work credits does not exceed Kritenbrink's sentence in an "unexpected manner so as to give rise to protection by the Due Process Clause" on its own force. *See Torres,* 292 F.3d at 150.

■ Kritenbrink served five years of a ten year sentence, which does not appear to exceed his sentence in an unexpected manner. Therefore, Kritenbrink does not possess a liberty interest to a particular classification or to a particular level of security derived from the Due Process Clause itself.

### *State–Created Liberty Interest*

However, Kritenbrink may have a state-created liberty interest if state statutes and prison regulations granted him a liberty interest that entitled him to due process protections. *Neal,* 131 F.3d at 827. Defendants cite *Hernandez v. Johnston,* 833 F.2d 1316, 1318 (9th Cir.1987) (relying on *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)), for the proposition that inmates do not have a liberty interest in a particular classification.[4] However, since the *Hernandez* deci-

---

4. We note that the *Hernandez* court specifically mentioned that "[a] different question might be presented if a prisoner's classification adversely affected his eligibility for parole or good time credits." *Hernandez,* 833 F.2d at 1318. Thus, it is not clear that *Her-*nandez is directly on point because plaintiff is specifically alleging the loss of "day work credits," which would "have therefore resulted in his earlier release from prison." (Compl., ¶ 22.)

sion, the Supreme Court has curtailed the focus on the mandatory language analysis of *Hewitt*, 459 U.S. at 466, 103 S.Ct. 864, by limiting liberty interests:

> to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Sandin*, 515 U.S. at 484, 115 S.Ct. 2293 (internal citations omitted) (emphasis added).

Therefore, the Supreme Court has made it "clear that the focus of the liberty interest inquiry is whether the challenged condition imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.2003) (citing *Sandin*, 515 U.S. at 483–84, 115 S.Ct. 2293). The *Jackson* court read *Sandin* as requiring courts to engage in a "factual comparison between conditions in [the] general [prison] population" and the hardship caused by the challenged condition. *Id.; see Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.2003) ("Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a 'condition or combination of conditions or factors [that] requires case by case, fact by fact consideration.'") (quoting *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996)). Although under Rule 12(b)(6), a court inquires into whether the plaintiff has sufficiently alleged facts that might support a claim entitling him to relief, such an inquiry might be better suited for summary judgment. *See, e.g., Jackson*, 353 F.3d at 756–57 (discussing the fact-specific nature of the *Sandin* inquiry, determining that plaintiff had alleged a due process claim under section 1983 by taking the complaint's allegations as true, but also noting that "[t]he present inquiry is better suited for summary judgment").

The Court in *Sandin* specifically mentioned three guideposts to frame the fact-specific, liberty interest inquiry: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody[,]" and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will inevitably affect the duration of the prisoner's sentence. *Sandin*, 515 U.S. at 486–87, 115 S.Ct. 2293. At this stage, we have no evidence on many of these factors, and the complaint fails to allege facts relevant to many of these factors.

The complaint alleges that Kritenbrink had a liberty interest in "obtaining minimum custody classification" because "such classification would have qualified him for various work programs from which he would have received day for day work credits ... and which would have therefore resulted in his earlier release from prison." (Compl., ¶ 22.) However, at the motion to dismiss stage, neither the complaint nor the evidence in the record allows us to assess the "atypical or significant hardship," if any, resulting from "sexual offender" status, the denial of "work camp" assignment or the denial of work-time credits, as compared to the "ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484, 115 S.Ct. 2293.

We do not have evidence nor does the complaint reference conditions imposed on "sex offenders" versus the general prison population. Although Kritenbrink was likely classified as a "sex offender" and was thus not entitled to "minimum custody classification" during his incarceration, we do not know the degree of restraint resulting from his "sex offender" status. We have no information about the terms, con-

ditions, or other factors entailed in the "minimum custody classification" vis-a-vis general conditions and ordinary incidents of prison life. The only factor weighing in favor of finding a protected liberty interest is taking the facts of the complaint as true, Kritenbrink's classification adversely affected the duration of his sentence. However, this sole factor is insufficient to state a claim.

Therefore, we find that Kritenbrink's complaint has failed to state a claim that he had a liberty interest to a "minimum custody classification" or non-sex offender status. Although we do not seek to comment on the eventual merits of plaintiff's claim, we believe that he should be given a chance to rectify these deficiencies in an amended complaint. *See* Fed.R.Civ.P. 15(a) ("Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."). Therefore, we will dismiss this specific claim without prejudice so that Kritenbrink can amend his pleading.

### Habeas Remedy

Defendants argue that Kritenbrink had an available remedy in that he could have filed a writ of habeas corpus under Nevada Revised Statutes ("NRS") 34.360.[5] It is unclear whether defendants argue that Kritenbrink is precluded from filing a Section 1983 action because of the "favorable termination" rule. *See Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("[I]n order to recover damages [under § 1983] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove the conviction or sen-

tence has been [reversed, expunged, declared invalid] ... or called into question by a federal court's issuance of a writ of habeas corpus ...."). The Ninth Circuit has clarified the distinction between § 1983 and habeas actions in that "[s]uits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'" *Ramirez v. Galaza,* 334 F.3d 850, 856 (9th Cir.2003) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 498–99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)).

In this case, a key distinction is Kritenbrink's allegation that his classification as a "sex offender" unlawfully denied his *eligibility* for "work camp." Although Kritenbrink alleges in his complaint that he would have been released approximately one-and-a-half years earlier had he not been denied access to "work camp," there is no guarantee that he would have actually achieved work day credits and gained early release had he been eligible. Kritenbrink may have been denied access to the work camp for budgetary reasons. Kritenbrink may have been ineligible even had he not been classified as a "sex offender." Kritenbrink may have decided that the rough conditions at work camp were not worth earning the work credits. The attenuation between Kritenbrink's classification and the duration of his sentence is too attenuated under the facts alleged in the complaint.

█ If Kritenbrink is seeking damages for the denial of his eligibility for "work camp," then the "favorable termination" rule does not apply to him because a favorable judgment will in "no way *guarantee*

---

**5.** NRS 34.360 provides: "Every person unlawfully committed, detained, confined or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint."

parole or necessarily shorten [his] prison sentence[ ] by a single day." [6] *Neal,* 131 F.3d at 824. Therefore, under this reading of Kritenbrink's claim, it is not barred under the "favorable termination" rule.

### Procedural Due Process Outside *Sandin*

■ The main thrust of Kritenbrink's complaint is that the prison officials failed to provide a procedure for him to challenge his classification. To the extent that Kritenbrink is alleging a general denial of procedural due process outside of the contours of *Sandin,* his claim fails because Kritenbrink had an available administrative remedy in AR 740. The current version of AR 740, which became effective on September 2, 2002, provides that "[i]nmates may use the Inmate Grievance System to resolve addressable inmate claims including, but not limited to personal property, property damage, personal injuries or any other tort claim or *matters relating to conditions of institutional life.*" (AR 740.02, Section 1.2.1, Defs.' Mot. to Dismiss, Ex. B (emphasis added).) The former version of AR 740, which was effective from January 21, 1992, until September 1, 2002, stated that:

I. Grievability
1. Grievable
The following matters shall be grievable by inmates.
a. The substance, interpretation, and application of policies, rules and procedures of the institution, facility or the Department, including but not limited to *classification decisions* and property claims.

(Former AR 740, Section V(I)(1)(a), Defs.' Mot. to Dismiss, Ex. A (emphasis added).)

Former AR 740 also provided specifically for classification grievance remedies:

J. Remedies
The grievance procedure shall afford a successful grievant a meaningful remedy. Although available remedies may vary among institutions/facilities, [a] reasonable range of meaningful remedies at each institution/facility is necessary. Remedies may include, but are not limited to, the following:
* * *
6. Classification grievances
Appropriate and prompt classification action (e.g., transfer, reduction of custody, award of furlough, change of work assignment).

(Former AR 740, Section V(J)(6), Defs.' Mot. to Dismiss, Ex. A.)

The affidavit of Jim Benedetti, who is the Associate Warden of Programs at the Northern Nevada Correctional Center and has twenty-one years of experience at NDOC, states that "[a]n inmate could file an inmate grievance on classifications issues under the former A.R. 740 and can file an inmate grievance under the current A.R. 740." (Aff. of Jim Benedetti, Attach. to Defs. Mot. to Dismiss.) Clearly, Kritenbrink had a method to grieve his classification under both the former AR 740 and the current AR 740. Although Kritenbrink's affidavit alleges that he "was repeatedly told that I had no right to a particular classification and there were no procedures available or remedies available to me to challenge my classification as a sex offender," these statements, while possibly implicating an estoppel argument, are not material as to whether there actually was an available administrative remedy.[7]

---

**6.** We do not comment on whether Kritenbrink can seek damages for the increased duration of his confinement despite the availability of a habeas remedy and the lack of a "favorable termination."

**7.** Kritenbrink did not pursue an estoppel argument in his opposition.

There is no question of material fact that Kritenbrink had an available administrative remedy.[8] Therefore, to the extent Kritenbrink claims that the defendants denied his procedural due process rights by failing to provide a method to grieve his classification, we grant summary judgment in favor of defendants.[9]

### Standing to Seek Injunctive Relief

One element of the case and controversy requirement under Article III of the Constitution is the requirement that the plaintiff have standing to bring a particular claim. To survive a motion to dismiss for lack of standing under Article III, a plaintiff must have sufficiently alleged three elements: (1) a concrete and particularized "injury in fact" that is actual or imminent; (2) a causal connection between the injury and the challenged conduct such that the injury is fairly traceable to defendant's conduct; and (3) likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff has the burden of alleging facts sufficient to satisfy these three elements. *Schmier v. United States Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 821 (9th Cir.2002) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)).

When "a plaintiff seeks prospective injunctive relief, he must demonstrate 'that he is realistically threatened by a *repetition* of the violation'" as a part of the "injury in fact" requirement. *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir.2001) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) (internal ellipsis omitted and emphasis added). The mere fact that a plaintiff has suffered an injury in the past is not sufficient to allege standing for injunctive relief. *Lyons*, 461 U.S. at 109, 103 S.Ct. 1660 (holding that plaintiff did not have standing to seek prospective injunctive relief forbidding police to use control holds because plaintiff did not make a showing that he was realistically threatened by a repetition of the police's use of control holds).

In this case, Kritenbrink has been released on parole. Not surprisingly, Kritenbrink's complaint does not allege facts sufficient to establish that he is realistically likely to return to prison and, therefore, is realistically threatened by a *repetition* of the violation. Therefore, Kritenbrink does not have standing to seek prospective injunctive relief, and we must dismiss his claim for injunctive relief

### Conclusion

In conclusion, Leiter's claims are precluded by the exhaustion requirement of the PLRA.

8. We note that the fact that defendants provided a method for Kritenbrink to grieve his classification does not end the inquiry into whether Kritenbrink received sufficient due process should he have a protected liberty interest. *See Neal*, 131 F.3d at 830 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)) (holding that minimum requirements of due process are required to protect a liberty interest, including advance written notice of the claimed violation and a written statement of the fact-finders as to the evidence relied upon and the reasons for the disciplinary action taken). It is undisputed that Kritenbrink did not receive such due process protections as advanced written notice and a written statement by the fact-finders. If Kritenbrink can amend his complaint to properly allege a liberty interest, then the procedural due process required is likely more than a post-deprivation, grievance remedy.

9. It is also possible that Kritenbrink had a due process remedy in NRS 34.360, Nevada's habeas statute, to challenge his classification. However, since we hold that AR 740 provided such a procedural remedy, we need not reach that issue.

Since the PLRA does not apply to Kritenbrink, his failure to exhaust is not a bar to his claims. Nevertheless, grievance procedures were available to Kritenbrink in order to challenge his classification as a sex offender, and his due process claim fails to the extent that it alleges otherwise.

Furthermore, Kritenbrink failed to plead facts sufficient to establish a liberty interest in his classification or to "minimum custody" status. A more detailed complaint might enable Kritenbrink to plead a liberty interest. Therefore, dismissal with respect to the question of whether Kritenbrink had a liberty interest shall be without prejudice.

Also, Kritenbrink was not required to file a habeas action prior to bringing the Section 1983 damages action with respect to his classification because a favorable judgment would not necessarily result in a shorter sentence. Finally, Kritenbrink's complaint also does not allege facts sufficient to confer standing to seek injunctive relief and we shall dismiss this claim without prejudice.

*IT IS THEREFORE HEREBY ORDERED THAT* defendants' motion to dismiss (# 10) all of the claims of plaintiff Leiter is **GRANTED**. Plaintiff Leiter's claims are dismissed without prejudice.

*IT IS FURTHER ORDERED THAT* defendants' motion to dismiss (# 10) plaintiff Kritenbrink's claim of denial of due process with respect to his liberty interest is **GRANTED**.

*IT IS FURTHER ORDERED THAT* defendants' motion to dismiss (# 10) plaintiff Kritenbrink's claim for injunctive relief is **GRANTED**.

*IT IS FURTHER ORDERED THAT* defendants' motion for summary judgment (# 10) against the claims of plaintiff Kritenbrink that defendants did not provide a procedure to grieve his classification is **GRANTED**.

*IT IS FURTHER ORDERED THAT* plaintiff Kritenbrink shall have 20 days within which to file an amended complaint with respect to his claim that he had a liberty interest denied without proper due process protections. If he does not file an amended complaint within 20 days, then judgment will be entered in favor of all defendants and against all plaintiffs.